## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DONAN R. SHERMAN,

                Plaintiff,

    v.

ANDREW M. SAUL,[1]

                Defendant.

CIVIL ACTION NO. 3:19-CV-02178

(MEHALCHICK, M.J.)

### MEMORADUM

Plaintiff Donan R. Sherman ("Sherman") brings this action under sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. § 405(g), 1383(c)(3) (incorporating § 405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9; Doc. 10).

For the reasons set forth below, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is hereby ordered that the Commissioner's decision to deny Sherman benefits is **AFFIRMED**. **FINAL JUDGMENT** is entered in favor

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Nancy A. Berryhill with her successor, Social Security Commissioner Andrew Saul. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

of the Commissioner. The Clerk of Court is directed to **CLOSE** this case.

## I.   BACKGROUND AND PROCEDURAL HISTORY

In October 2016, Sherman protectively filed an application under Title II for disability insurance benefits. (Doc. 14-2, at 11). In November 2016, Sherman also protectively filed an application under Title XVI for supplemental security income. (Doc. 14-2, at 11). In both applications Sherman alleged disability beginning December 9, 2009, due to attention deficit disorder (ADD), depression, anxiety, phobia of people and places, bipolar, chronic migraines, uncontrolled mood swings from good to bad, memory loss after mood swings, anger aggression, and because she forgets how to speak. (Doc. 14-7, at 17). The Social Security Administration initially denied the applications on April 12, 2017, prompting Sherman's request for a hearing, which Administrative Law Judge (ALJ) Michele Stolls held on July 12, 2018. (Doc. 14-2, at 11; Doc. 14-3, at 2).  In a written decision dated December 4, 2018, the ALJ determined that Sherman is not disabled and therefore, not entitled to benefits under Titles II and XVI. (Doc. 14-2, at 11). The Appeals Council subsequently denied Sherman's request for review. (Doc. 14-2, at 2).

On December 19, 2019, Sherman filed the instant action. (Doc. 1). The Commissioner responded on March 26, 2020, providing the requisite transcripts from Sherman's disability proceedings. (Doc. 13; Doc. 14). The parties then filed their respective briefs, with Sherman alleging four bases for reversal or remand (Doc. 17; Doc. 20; Doc. 21; Doc. 22).

## II.   STANDARDS OF REVIEW

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A); 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905.[2] Additionally, to be eligible under Title II, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

## A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1).

## B. JUDICIAL REVIEW

The Court's review of a determination denying a claimant's application for benefits is limited "to considering whether the factual findings are supported by substantial evidence."

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(d).

*Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at \*1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Sherman is disabled, but whether the Commissioner's determination that Sherman is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at \*1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings

4

of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III.   THE ALJ'S DECISION

In his written decision, the ALJ determined that Sherman was not under a disability, as defined in the Social Security Act, from December 9, 2009 – the alleged onset date, through the date of this decision. (Doc. 14-2, at 23). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

#### A.   STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. §§ 404.1520(b), 416.920(b). In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574; 20 C.F.R. § 416.974.

Here, the ALJ determined that "[Sherman] has not engaged in substantial gainful activity since December 31, 2018." (Doc. 14-2, at 14). Thus, the ALJ proceeded to step two of the analysis. (Doc. 14-2, at 14).

#### B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ

determines that a claimant does not have an "impairment or combination of impairments which significantly limits" the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ considers step three.

Here, the ALJ found that Sherman has seven medically determinable impairments – a major depressive disorder, social phobia, attention deficit hyperactivity (ADHD)/ADD, a bipolar disorder with agoraphobia and panic attacks, post-traumatic stress disorder (PTSD), an anxiety disorder not otherwise specified/a generalized anxiety disorder, and an adjustment disorder with depressed mood. (Doc. 14-2, at 14).

C.  STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Here, the ALJ determined that neither of Sherman's impairments, considered individually or collectively, met or medically equaled the severity of a listed impairment. (Doc. 14-2, at 14). The ALJ considered the mental disorders listings under section 12.00 of appendix 1 – specifically, listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma- and stressor-related disorders). 20 C.F.R. Part 404, Subpt. P,

App. 1 § 12.00. (Doc. 14-2, at 15).

     D.  Residual Functional Capacity

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a), 416.929(a). This involves a two-step inquiry where the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c).

Here, Sherman alleged that her medical impairments affected her ability to talk, retain information, complete tasks, concentrate, and understand. (Doc. 14-7, at 35). The ALJ found that while Sherman's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Sherman's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 14-2, at 18). The ALJ then went on to detail the record evidence.

After weighing and considering the evidence, the ALJ determined that Sherman had the, "[RFC] to perform a full range of work at all exertional levels, however, her ability to work at these levels [was] reduced" to the following:

> [Sherman] is limited to occupations requiring no more than simple, routine tasks, not performed in a fast-paced production environment, involving only

> simple, work-related decisions, and in general, relatively few work place
> changes; is limited to occupations that require no more than occasional
> interaction with supervisors and coworkers, no tandem tasks with coworkers,
> and no interaction with members of the general public; and is limited to
> occupations requiring low stress, defined as occasional decision-making
> required.

(Doc. 14-2, at 17).

### E.   STEP FOUR

Step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b), 416.960(b). "If the claimant can perform [her] past relevant work despite [her] limitations, [s]he is not disabled." *Hess, 931 F.3d at 202* (citing 20 C.F.R. § 404.1520(a)(4)(iv)).

Here, based on testimony adduced from a vocational expert at Sherman's administrative hearing, the ALJ determined that Sherman was unable to perform her past relevant work as a food sales clerk at a deli/convenience store, a cashier/checker retail, or a stock clerk. (Doc. 8-2, at 43). Thus, the ALJ proceeded to step five of the sequential analysis.

### F.   STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here, considering Sherman's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Sherman could have performed. (Doc. 14-2, at 22-23). In making that determination, the ALJ relied on the vocational expert's testimony that Sherman was able to perform the requirements of occupations, such as a laundry worker in commercial laundry, a cleaner and polisher, and a garment sorter, with open positions ranging from 27,000 to 208,000 positions available in the national job market. (Doc. 14-2, at 22-23). Accordingly, the ALJ determined that Sherman was not disabled and denied her applications for benefits. (Doc. 14-2, at 23).

## IV.   DISCUSSION

Sherman advances four arguments on appeal, arguing that the ALJ erred by (1) improperly assessing her psychiatric impairments; (2) improperly weighing the medical opinion evidence of record; (3) improperly rejecting the treating psychiatrist's medical opinions as stated in the Global Assessment of Functioning (GAF) scores; and (4) assessing her disability at step five of the sequential analysis. (Doc. 17, at 2). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and is in accordance with the law and regulations. (Doc. 12). For the following reasons, the Court finds that the ALJ properly applied the law and that substantial evidence supports the RFC assessment.

### A. THE ALJ DID NOT ERR IN ASSESSING SHERMAN'S PSYCHIATRIC IMPAIRMENTS.

Sherman's first claim of error challenges the ALJ's evaluation of her psychiatric impairments. (Doc. 17, at 5-10). The Court of Appeals has ruled that the ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir.

2011). When determining an individual's RFC, the ALJ must consider all the evidence of record, regardless of its source, including a claimant's medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). Additionally, Third Circuit courts have found that normal mental status examination findings may constitute substantial evidence upon which the ALJ can rely. *Nelson v. Astrue*, 321 F. App'x 195, 197 (3d Cir. 2009).

Guided by these legal tenets, the Court finds substantial evidence to support the ALJ's consideration of Sherman's psychiatric impairments. Here, Sherman argues that the ALJ improperly assessed the full extent of her psychiatric impairments. (Doc. 17, at 6). Specifically, Sherman asserts that the ALJ's review of her mental status examinations played a critical role in weighing the medical opinions of record and the overall RFC determination. (Doc. 17, at 6). Sherman contends, however, that the ALJ committed error in focusing only on the mental status examinations and not delving deeper into the longitudinal mental health records, including her subjective complaints in her disability determination. (Doc. 17, at 9). Sherman asserts that the ALJ's improper analysis of the mental health record evidence (particularly her mental status examination findings) prejudicially affected the weighing of the medical opinions of record and the overall RFC determination. (Doc. 17, at 6). For example, Sherman contends that the ALJ afforded "great" weight to the opinion of State agency psychologist, John Gavazzi and rejected the opinion of her treating psychiatrist, Dr. George Sowerby based on her relatively normal mental status examination findings throughout the relevant period of review. (Doc. 17, at 6). Additionally, Sherman avers that the ALJ lists various medical records, which she claims evidence normal psychiatric findings. (Doc. 17, at 6). Sherman contends, however, that most of those records are largely irrelevant

because they involved medical treatments for other non-psychiatric impairments. (Doc. 17, at 6-7). Further, Sherman argues that the ALJ appears to demand constant and persistent psychiatric symptoms in order to substantiate the severity of her mental health impairments. (Doc. 17, at 8). Sherman submits, however, that this is in error because the issue is not whether she is symptomatic 24 hours per day, seven days a week, but whether her psychiatric symptoms are sufficiently severe that she is unable to work a full-time job in a regular and continuing basis. (Doc. 17, at 8).

Contrary to Sherman's assertions, substantial evidence supports the ALJ's consideration of her psychiatric impairments. In the instant case, Sherman alleged disability based upon ADD, depression, anxiety, a phobia of people and places, bipolar disorder, chronic migraine headaches, uncontrollable worsening mood swings, memory loss after mood swings, anger and aggression, and her forgetfulness pertaining to speech. (Doc. 14-7, at 17). Sherman asserts that these medical conditions interfere with her ability to talk, retain information, complete tasks, concentrate, and understand. (Doc. 14-7, at 35). The ALJ found, however, that while Sherman's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Sherman's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 14-2, at 18).

The ALJ reasoned that in June 2016, the medical providers at the Robert Packer Hospital examined Sherman and recorded no mental health abnormalities. (Doc. 14-9, at 16; Doc. 14-12, at 42). The ALJ also reasoned that in November 2016, Geisinger providers reported that Sherman's affect and judgement were normal. (Doc. 14-9, at 14). Further, the ALJ explained that in late 2016, Northern Tier Counseling providers noted that Sherman agreed to a safety plan whereby if she felt unsafe, homicidal, or suicidal, she must contact her

service care providers. (Doc. 14-10, at6). However, the medical evidence failed to indicate that Sherman was experiencing these types of feelings. (Doc. 14-10, at 6). Additionally, the ALJ explained that in November 2016, upon examination at Guthrie, Sherman reported that she incurred no depression. (Doc. 14-12, at 32). Further, in February 2017, May 2017, November 2017, and February 2018, the ALJ explained that the medical records reflected that Sherman's mental status examination findings were all normal. (Doc. 14-2, at 19). The ALJ further found that while Sherman reported suicidal ideations in May 2018, upon examination in June 2018, Sherman's mental status examination findings returned to normal. (Doc. 14-14, at 18-19; Doc. 14-14, at 16-17).

Additionally, in evaluating Sherman's psychiatric impairments, the ALJ considered the GAF scores of record. (Doc. 14-2, at 19). The ALJ considered Sherman's June 2007 GAF score of 50 and her January 2008 GAF score of 51, which were both assessed prior to the commencement of the period of review. (Doc. 14-2, at 19). The ALJ further considered Sherman's GAF scores assessed during the relevant period of review. (Doc. 14-2, at 19). For example, in October 2010, Dr. Sowerby, Sherman's treating psychiatrist, assigned Sherman a GAF score of 40, while also in October 2010, Dr. Charles McGurk assigned Sherman a GAF score of 50. (Doc. 14-13, at 24-27). In May 2018, Dr. Sowerby, assigned Sherman a GAF score of 45; and in December 2010, Sherman was assigned a GAF score of 55.[3] (Doc. 14-13, at 24-27).

The ALJ afforded "little" weight to the GAF scores assessed in June 2007 and January

---

[3] The Court cannot decipher the physician's signature on the psychiatric evaluation form, which indicates that Sherman was assigned a GAF score of 55 on December 29, 2010. The signature is illegible. (*See* Doc. 14-13, at 84).

2008, concluding that they were relevant to a time prior to the commencement of the period of review. (Doc. 14-2, at 19). Similarly, the ALJ assigned "little" weight to the other GAF scores of record, concluding that while the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition*, indicates that certain GAF scores constitute a serious impairment that normally precludes an individual from maintaining a job, a GAF score is based upon a hypothetical continuum and by itself is not an exertional or non-exertional vocational factor suitable for an RFC profile. (Doc. 14-2, at 19). The ALJ further explained that GAF scores are an indication that the identifiable impairments may exist and need to be evaluated. (Doc. 14-2, at 19).

Additionally, the ALJ considered the medical opinions of Sherman's treating psychiatrist, Dr. Sowerby, and the State agency psychologist, Dr. Gavazzi. (Doc. 14-2, at 20). In May 2016 and August 2016, Dr. Sowerby completed two mental impairment questionnaires on Sherman's behalf. (Doc. 14-9, at 4-7; Doc. 14-13, at 24-27; Doc. 14-14, at 40-43). In the questionnaire, Dr. Sowerby opined that Sherman had moderate limitation in her activities of daily living; marked limitation in her social functioning; marked limitation in concentration, persistence, and pace; and one to two episodes of decompensation, of extended duration. (Doc. 14-14, at 42). Additionally, Dr. Sowerby stated that Sherman had a history of mental disorder that had lasted at least two years and that had resulted in her inability to function outside of a highly supportive living arrangement. (Doc. 14-14, at 42-43). Dr. Sowerby further reasoned that because of Sherman's conditions, she would miss in excess of four days of work, per month. (Doc. 14-9, at 7).

The ALJ, however, afforded "little" weight to Dr. Sowerby's opinion, concluding that the limitations overestimated Sherman's degree of limitation. (Doc. 14-2, at 19). Additionally, the ALJ explained that while the medical records demonstrated that Sherman had incurred

some periods of increased symptomatology, overall her mental status examination findings more consistently revealed mild to moderate symptoms. (Doc. 14-2, at 20). Further, the ALJ explained that the objective evidence corroborated the results of the examination findings, consistent with Sherman's ability to complete at least some household tasks. (Doc. 14-2, at 20). Therefore, because Sherman's signs, symptoms, and residual ability were more consistent with an individual who was capable of performing an RFC for simple work with limited contact with others, the ALJ assigned "little" weight to Dr. Sowerby's opinion. (Doc. 14-2, at 20).

The ALJ also considered the opinion of Dr. Gavazzi and afforded his opinion "great" weight. (Doc. 14-2, at 20). In April 2017, Dr. Gavazzi opined that Sherman's mental health issues, including depression, anxiety, and bipolar disorder, caused Sherman to incur mild limitation in her ability to understand, remember, and apply information; moderate limitation in her ability to interact with others; moderate limitation in her ability to concentrate, persist, and maintain pace; and mild limitation in her ability to adapt or to manage herself. (Doc. 14-2, at 20). The ALJ afforded "great" weight to Dr. Gavazzi's opinion, concluding that the evidence of record, inclusive of Sherman's mental status examination findings throughout the period of review, supported the conclusions in Dr. Gavazzi's opinion. (Doc. 14-2, at 20). The ALJ explained that Sherman had suffered historical abuse and this event harmed her ability to interact with others. (Doc. 14-2, at 20). Thus, the anxiety caused by this history interfered with her ability to focus and to concentrate. (Doc. 14-2, at 20). Additionally, the ALJ stated that these symptoms warranted the imposition of accommodations consistent with simple work, and with limitations in her need to interact with others. (Doc. 14-2, at 20). Therefore, the ALJ afforded "great" weight to Dr. Gavazzi's opinion.

Sherman argues that the ALJ improperly assessed the full extent of her psychiatric

impairments. (Doc. 17, at 6). Sherman asserts that the ALJ's review of her mental status examinations played a critical role in weighing the medical opinions of record and the overall RFC determination. (Doc. 17, at 6). Sherman contends that the ALJ committed erro in focusing only on the mental status examinations and not delving deeper into the longitudinal mental health records, including her subjective complaints in her disability determination. (Doc. 17, at 9). The Court disagrees. As mentioned *supra*, the Court of Appeals has concluded that normal mental status examination findings may constitute substantial evidence upon which the ALJ can rely. *Nelson v. Astrue*, 321 F. App'x 195, 197 (3d Cir. 2009); *see also* Cosmas v. Comm'r of Soc. Sec., 283 F. App'x 976, 978 (3d Cir. 2008). Additionally, upon considering Sherman's psychiatric impairments, the ALJ adequately explained the legal and factual basis for her determination, and based her conclusions on substantial evidence. It is the right and responsibility of the ALJ to make such assessments, and the Court finds that substantial evidence supports this determination. Sherman's argument simply asks the Court to re-weigh the evidence, which this Court cannot do. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'") (quoting *Williams*, 970 F.2d at 1182). Because the Court cannot re-weigh the evidence, the Court finds that the ALJ has not erred in evaluating Sherman's psychiatric impairments.

B. The ALJ did not err in weighing the opinions of Dr. Sowerby and Dr. Gavazzi.

Sherman's next claim of error challenges the ALJ's consideration of the opinion evidence of record. (Doc. 17, at 10-16). Specifically, Sherman argues that the ALJ erred in assigning "little" weight to the opinion of her treating psychiatrist, Dr. Sowerby and "great" weight to the State agency psychologist, Dr. Gavazzi. (Doc. 17, at 10). It is clear that the ALJ

– not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. When determining a claimant's RFC, the ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. §§ 404.1527; 416.927. An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. §§ 404.1527(c); 416.927(c). "A cardinal principal guiding disability eligibility determination is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgement based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotations omitted). Nevertheless, an ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

Applying the above standard to the present record, the Court finds that the ALJ did not err in weighing the opinions of Dr. Sowerby and Dr. Gavazzi. First, Sherman argues that the ALJ erred in assigning "little" weight to the opinion of Dr. Sowerby, her treating psychiatrist. (Doc. 17, at 10-13). Sherman asserts that under 20 C.F.R. § 404.1527(c) and the law of the Third Circuit, a treating physician's opinions are generally entitled to controlling weight. (Doc. 17, at 10). Thus, Sherman contends that the ALJ failed to properly analyze Dr. Sowerby's opinion under the factors set forth in 20 C.F.R. § 404.1527(c). (Doc. 17, at 11). Specifically, Sherman argues that Dr. Sowerby's opinion is entitled to greater weight because he is a long-term, treating source who has been treating Sherman for over eight years. (Doc. 17, at 12). Sherman further contends that Dr. Sowerby is a specialist – a psychiatrist, and the only psychiatrist of record to give a medical opinion pursuant to 20 C.F.R. § 404.1527(c)(5).

(Doc. 17, at 12). Additionally, Sherman argues that the ALJ erred in discounting Dr. Sowerby's opinions based on mental status examinations from providers who had no expertise in mental health treatment, and did not provide treatment concerning her mental health. (Doc. 17, at 12).

Second, Sherman argues that the ALJ erred in assigning "great" weight to State agency psychologist, Dr. Gavazzi, a non-examining, non-treating source. (Doc. 17, at 13-16). Sherman contends that a proper application of the regulatory factors set forth under 20 C.F.R. § 404.1527(c) would have warranted an assignment of "little" weight. (Doc. 17, at 13-16). For example, Sherman reasons that Dr. Gavazzi is only a psychologist, who never examined her, and thus, was never able to personally observe her mental functioning. (Doc. 17, at 13). Additionally, Sherman contends that Dr. Gavazzi failed to cite to any clinical evidence to support his opinions and failed to properly account for the full extent of Sherman's limitations set forth in the medical record. (Doc. 17, at 14-15). Sherman avers that Dr. Gavazzi provides no explanation for his opinions, and makes unsubstantiated conclusions. (Doc. 17, at 14). Thus, Sherman claims that the RFC is not supported by substantial evidence because it is unsupported by any medical opinion of record. (Doc. 17, at 16).

Despite Sherman's assertions, the Court finds that the ALJ did not err in weighing the opinions of Dr. Sowerby and Dr. Gavazzi. In this case, the ALJ assigned "little" weight to the mental impairment questionnaires completed by Dr. Sowerby in May 2016 and August 2016. (Doc. 14-2, at 19-20). The ALJ reasoned that the functional limitations suggested in the questionnaires overestimated Sherman's degree of limitation. (Doc. 14-2, at 19). Additionally, the ALJ reasoned that while the medical records demonstrated that Sherman had incurred some periods of increased symptomology, overall her mental status examination findings more consistently revealed mild to moderate symptoms. (Doc. 14-2, at 19-20). Further, the

ALJ explained that the objective medical evidence corroborated the results of the examination findings which were consistent with Sherman's ability to complete at least some household tasks. (Doc. 14-2, at 20). Therefore, because Sherman's signs, symptoms, and residual ability were more consistent with an individual who retained the RFC for simple work with limited contact with others, the ALJ assigned "little" weight to Dr. Sowerby's opinion. (Doc. 14-2, at 20).

To the contrary, the ALJ assigned "great" weight to Dr. Gavazzi's opinion. (Doc. 14-2, at 20). The ALJ reasoned that the evidence of record, including Sherman's mental status examination findings throughout the period of review, supported the RFC determination. (Doc. 14-2, at 20). Additionally, the ALJ explained that Sherman suffered historical abuse and that this event had harmed her ability to interact with others. (Doc. 14-2, at 20). Further, the ALJ explained that the anxiety caused by this history interfered with Sherman's ability to focus and to concentrate. (Doc. 14-2, at 20). Therefore, these symptoms warranted the imposition of accommodations consistent with simple work and justified limitations in Sherman's need to interact with others. (Doc. 14-2, at 20). Thus, for these reasons, the ALJ assigned "great" weight to Dr. Gavazzi's opinion.

In sum, the ALJ chose between contrasting medical opinions, giving greater weight to those opinions which were more congruent with Sherman's treatment records and activities of daily living. It is the right and responsibility of the ALJ to make such assessments and the Court finds that substantial evidence supported the ALJ's decision as to this matter. Sherman's argument simply asks the court to re-weigh the evidence, which we cannot do. Thus, the Court finds the ALJ did not err in her consideration of the opinion evidence.

C. Substantial evidence supports the ALJ's consideration of Sherman's GAF scores.

Next, Sherman argues that the ALJ improperly rejected the GAF scores of record. (Doc. 17, at 16). A GAF score is a "numerical summary of a clinician's judgment of [an] individual's overall level of functioning . . ." *Rivera v. Astrue*, 9 F. Supp.3d 495, 504 (3d Cir. 2014); American Psychiatric Association*, The Diagnostic and Statistical Manual of Mental Disorders (DSM–IV)*, *32*, 32 (4th ed. 2000). Under the applicable regulations and Third Circuit case law, a GAF score does not have a direct correlation to the severity requirements in the Commissioner's mental disorders listings, and is never dispositive in the disability determination. *Rivera*, 9 F. Supp.3d at 504; *see also Gilroy v. Astrue*, 351 F. App'x 714, 715 (3d Cir. 2000). GAF scores are only medical evidence that informs the Commissioner's reasoned judgement of whether an individual is disabled. *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 535 (3d Cir. 2011). Although a claimant's GAF scores does not have a "'direct correlation to the severity requirements,' . . . [the GAF score] remains the scale used by mental health professionals to 'assess current treatment needs and provide a prognosis.' [Therefore, the GAF score is] medical evidence . . . and must be addressed by an ALJ in making a determination regarding a claimant's disability." *Rivera*, 9 F. Supp.3d at 504.

Despite Sherman's contentions, the Court finds that the ALJ properly considered her GAF scores of record. Sherman argues that the ALJ erred in rejecting her June 2007 GAF score of 50 and her January 2008 GAF score of 51 when the ALJ determined that those scores were assessed outside of the relevant time period. (Doc. 17, at 16). Sherman argues that these GAF scores are relevant because they demonstrate longstanding and ongoing severe psychiatric issues. (Doc. 17, at 16). Sherman also contends that these scores are compelling because they were assessed by her treating psychiatrist, Dr. Sowerby, who treated her over a

period of eight years. (Doc. 17, at 17). Sherman asserts that the fact that she has low GAF scores indicating severe symptoms precluding the ability to work in 2010 and that persist into 2018 substantiates the chronic and repeating nature of her psychiatric severe impairments that interfere with her ability to work on a regular and continuing basis. (Doc. 17, at 16).

Moreover, Sherman argues that the ALJ's reasoning for assigning "little" weight to the GAF scores of record, is flawed because courts in this district have found that GAF scores are "clinically significant findings." (Doc. 17, at 17). For example, in addition to discounting the GAF scores assessed in June 2007 and January 2008, the ALJ also considered and discounted Sherman's GAF scores of 40 and 50 assessed in October 2010; her GAF score of 45 assessed in May 2018; and her GAF score of 55 assessed in December 2010. (Doc. 14-2, at 19). The ALJ reasoned:

> Although the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, indicates that certain GAF scores constitute a serious impairment that normally precludes an individual from maintaining a job, a GAF score is based upon a hypothetical continuum and by itself is not an exertional or non-exertional vocational factor suitable for a residual functional capacity profile. Rather, it is an indication that the identifiable impairments may exist and need to be evaluated.

(Doc. 14-2, at 19). However, Sherman argues that the ALJ should have evaluated the GAF scores as "clinically significant findings" instead of rejecting them based on unsubstantiated reasoning. (Doc. 17, at 17). Sherman further argues that because GAF scores are to be treated as medical opinions from a treating physician, the ALJ was required to analyze them under 20 C.F.R. 404.1527, which she failed to do. (Doc. 17, at 17).

The Court is not persuaded by Sherman's argument as to this issue. Sherman argues that the ALJ erred in rejecting her June 2007 GAF score of 50 and her January 2008 GAF score of 51, which the ALJ reasoned were assessed outside of the relevant time period. (Doc. 17, at 16). Sherman avers that these GAF scores are relevant because they demonstrate

longstanding and ongoing severe psychiatric issues. (Doc. 17, at 16). However, the ALJ considered the GAF scores within the relevant period of review, which similar to the June 2007 and January 2008 GAF scores, ranged from 50 to 55. (*See* Doc. 14-2, at 19). Similar to Sherman's June 2007 and January 2008 GAF scores, the ALJ assigned "little" weight to the GAF scores assessed during the relevant period of review. (Doc. 14-2, at 19). The ALJ reasoned that while the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, indicated that certain GAF scores constitute a serious impairment that normally preclude an individual from maintaining a job, a GAF score is based upon a hypothetical continuum and by itself is not an exertional or non-exertional vocational factor suitable for a residual functional capacity profile. (Doc. 14-2, at 19). Rather, GAF scores are an indication that the identifiable impairments may exist and need to be evaluated. (Doc. 14-2, at 19). The ALJ further explained that the RFC adopted in the record properly assessed and considered all of Sherman's limitations, based upon the record as a whole. (Doc. 14-2, at 19). Thus, the ALJ assigned Sherman's GAF scores during the relevant period "little" weight in her determination. (Doc. 14-2, at 19).

While Sherman alleges error concerning the ALJ's consideration of her GAF scores assessed in June 2007 and January 2008, she fails to demonstrate how further consideration would make a difference or lead to a different result in this case, particularly given the fact that the ALJ considered similar GAF scores during the relevant period and also afforded them "little" weight. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Further, with regard to the GAF scores assessed during the relevant period of review, the Court finds that the ALJ adequately explained the legal and factual basis for her

determination, and based her conclusions on substantial evidence. Therefore, the Court finds no basis for disturbing the ALJ's determination as to this issue.

      D. THE ALJ'S STEP FIVE EVALUATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Finally, Sherman argues that because the ALJ erred on all of the issues mentioned *supra*, the ALJ undoubtedly erred in her step five evaluation. Specifically, Sherman argues that because the ALJ's RFC does not properly account for the full extent of her psychiatric impairments, the resulting vocational testimony is unreliable and cannot support the ALJ's step five determination. As thoroughly explained in the decision above, this Court finds that the ALJ's assessment of the evidence in this case complied with the requirements of the law and thus, was supported by substantial evidence.

To reiterate, this Court is not tasked with revisiting the factual issues in this case, and we may not substitute our judgment for that of the ALJ. Instead, the Court is limited to determining whether the ALJ provided valid reasons for her evaluations and based her conclusions on substantial evidence. Thus, finding that the ALJ provided adequate articulation for her determinations which were grounded in substantial evidence, the Court finds no basis for disturbing the ALJ's determination on this matter.

## V.   CONCLUSION

Based on the foregoing, the Court **AFFIRMS** the Commissioner's decision to deny Sherman disability benefits and directs that **FINAL JUDGMENT BE ENTERED** in favor of the Commissioner and against Sherman. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.


Dated: **February 25, 2021**                    *s/ Karoline Mehalchick*
                                                **KAROLINE MEHALCHICK**
                                                **United States Magistrate Judge**